# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**SAS ASSOCIATES 1, LLC,** *et al.,*

     Plaintiffs,

**v.**

**CITY COUNCIL FOR THE CITY OF CHESAPEAKE,**

     Defendant.

**Case No: 2:21-cv-00491**

## BRIEF IN SUPPORT OF
## DEFENDANT'S 12(B)(6) MOTION TO DISMISS

The Defendant City Council for the City of Chesapeake ("City Council"), by counsel,

and pursuant to Federal Rule of Civil Procedure 12(b)(6), submits the following brief in support

of its Motion to Dismiss.  The facts alleged or incorporated by reference into Plaintiffs'

Complaint demonstrate, as a matter of law, that City Council did not purposefully or

intentionally discriminate against Plaintiffs in denying their rezoning application.  On the other

hand, the City Council had a rational basis for denying Plaintiff's rezoning application.  These

factual averments defeat Plaintiffs' Equal Protection Claim.  Plaintiffs' remaining counts are

either time barred or invalid.[1]  Accordingly, Plaintiffs' Complaint should be dismissed.

---

[1] Plaintiffs' jurisdiction is based upon 28 U.S.C. § 1331 because of their 42 U.S.C. § 1983 claim, which alleges an Equal Protection Clause violation (EPC) under the Fourteenth Amendment.  If this Court concludes, as it should, that Plaintiffs' EPC is not viable as a matter of law, this Court should dismiss Count II pursuant to 28 U.S.C. § 1367(c)(1) because it may decline supplemental jurisdiction when dismissing all claims over which it has original jurisdiction.  In addition, for the reasons stated *infra* Section D, Count III does not provide an adequate basis for this Court to maintain original jurisdiction.

**BACKGROUND**

In 2018 the Plaintiffs filed a rezoning application (the "Application") with the City of Chesapeake seeking to rezone the Property from R-15s (Residential), B-4 (Shopping Center Business), and A-1 (Agricultural); to R-MF-1 (Multifamily Residential), B-1 (Neighborhood Business), and C-1 (conservation), in order to develop a combination of 153 single family and townhouse units and 11,300 square feet of commercial space. (Doc. 1 ¶¶ 9, 14, 21.) The remainder of the Property would be rezoned for conservation. (*Id.*)

On January 21, 2020, the Chesapeake City Council held a public hearing on the application and denied it on a vote of 7-2. (Doc. 1 ¶¶ 24 and 27.) The City Council cited at least three reasons for denial: 1) traffic, 2) school capacity impacts, and 3) drainage/flooding concerns. (Doc. 1 Ex. B.)

The Plaintiffs disagree that the above-stated concerns are well-founded, and filed this action alleging that the City Council violated their equal protection rights, and that its decision was illegal because City Council required or imposed an unspecified "unconstitutional condition" for approval. Plaintiffs additionally seek a declaration that their constitutional and statutory rights have been violated, and that the City Council's denial of their rezoning application is void.

Unfortunately for Plaintiffs, their Complaint is legally infirm because the Complaint lacks significant, yet basic, factual allegations, and is merely an attempt to quibble with the City Council's legislative discretion.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Unadorned allegations of wrongdoing, "formulaic recitation[s]" of the elements of a claim, and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state viable claims. *Id.* (quoting *Twombly*, 550 U.S. at 555–57). Thus, when ruling upon a motion to dismiss, this Court must accept all well-pled facts as true, but it need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

The Court may consider documents attached to a complaint, "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin,* 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); *see also Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 736 (E.D. Va. 2002) ("the court may consider dispositive documents that are either attached to, or referenced in, the complaint."). The Fourth Circuit has explained that "[t]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir.1997)). Furthermore, allowing courts to consider such integral evidence which is referenced in a complaint prevents "isolated" facts from being mischaracterized. *See id.*

3

## ANALYSIS

**A.      Count One of The Complaint Should Be Dismissed Because Plaintiffs Have Failed to Adequately Plead That Their Equal Protection Rights Have Been Violated**

"When a land use permitted to one landowner is restricted to another similarly situated, the restriction is discriminatory, and, if not substantially related to the public health, safety, or welfare, constitutes a denial of equal protection of the laws." *City of Manassas v. Rosson*, 224 Va. 12, 18, 294 S.E.2d 799, 802 (1982) (quoting *Bd. Sup. James City County v. Rowe*, 216 Va. 128, 140, 216 S.E.2d 199, 210 (1975)).  However, "Equal Protection is 'not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Sowers v. Powhatan County, Virginia*, 347 F. App'x 898, 902, 2009 WL 3359204, at *4 (4th Cir. 2009) (quoting *F.C.C. v. Beach Commc'ns,* 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L.Ed.2d 211 (1993). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is *any reasonably conceivable state of facts that could provide a rational basis for the classification*." *Id.* (emphasis added).

Furthermore, "[t]he Supreme Court has made clear that when no fundamental right or suspect classification is at issue, the Equal Protection Clause allows a legislative body wide latitude in drawing classifications. Social or economic legislation 'will be sustained if the classification drawn ... is rationally related to a legitimate state interest.'" *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 438–39 (4th Cir. 2002).  In cases concerning local development permits, where no suspect classifications are issue, the courts "apply the most deferential standard of review to the [locality's] actions under the Equal Protection Clause."  *See id.*

4

1.      Plaintiffs' Equal Protection Challenge Must Fail Because The City Council Had a Rational Basis to Deny Their Application

"Equal Protection is 'not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Sowers v. Powhatan County, Virginia*, 347 F. App'x 898, 902, 2009 WL 3359204, at *4 (4th Cir. 2009) (citations omitted). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is *any reasonably conceivable state of facts that could provide a rational basis for the classification*." *Id.* (emphasis added).

The "vast majority of governmental action—especially in matters of local economics and social welfare, where state governments exercise a plenary police power—enjoys a '*strong presumption* of validity[.]'" *Id.* at *4 (emphasis in original). "The 'rational' aspect of rational basis review refers to a *constitutionally minimal level of rationality*; it is not an invitation to scrutinize either the instrumental rationality of the chosen means" nor the "normative rationality of the chosen governmental purpose." *Id.* (emphasis added).

In reviewing whether there is a "rational basis" for a local zoning decision, Virginia courts apply "well-settled" principles:

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. *The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare.* The [C]ourt will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is *fairly debatable* it must be sustained.

*Schefer v. City Council of City of Falls Church*, 279 Va. 588, 595, 691 S.E.2d 778, 782 (2010) (emphasis added). An issue is "fairly debatable when the evidence offered in support of the

opposing views would lead objective and reasonable persons to reach different conclusions."

*Bd. of Sup'rs of Fairfax County v. Robertson*, 266 Va. 525, 532, 587 S.E.2d 570, 575 (2003)

In alleging that a zoning decision is not "fairly debatable," it insufficient to plead factual allegations that the landowner will simply have *more evidence* than the locality.  Instead, '[t]he relevant inquiry is "whether there [was] *any* evidence in the record sufficiently probative to make a fairly debatable issue of the ... decision to deny[.]" *Bd. of Sup'rs of Fairfax County v. Robertson*, 266 Va. 525, 537, 587 S.E.2d 570, 578 (2003) (emphasis in original) ("the question is not 'who won the battle of the experts'").  The locality, therefore, only needs to present some modicum of credible evidence to make its zoning decisions "fairly debatable."  This is entirely consistent with the Fourth Circuit case law which sustains legislative decisions that are supported by "any reasonably conceivable state of facts that could provide a rational basis."

The Plaintiffs have plead themselves out of court by attaching Exhibit B to their Complaint. In Exhibit B, and in the body of the Complaint, the Plaintiffs admit three stated rational, reasonable bases upon which City Council denied their Petition.  City Councilmember Ritter made a motion to deny the application and stated the following reasons for doing so: 1) traffic, 2) school capacity, and 3) drainage/flooding.  (Doc. 1 ¶¶ 25, 28; Doc. 1 Ex. B.)

The Plaintiffs disagree with these reasons by arguing that they are unfounded in light of the City's comprehensive plan, and levels of service policy, with which Plaintiffs claim their project is compliant.  But Councilmember Ritter in her comments also correctly noted that the Comprehensive Plan and LOS policy are only that—policies—and do not tie the City Council's hands.  "While the minimum standards of the Comprehensive Plan may be only guidelines and not requirements to be applied inflexibly by the Board, it was still a matter within the Board's discretion to decide whether to adhere to those standards or to follow some other reasonable

approach in determining whether to grant or to deny the rezoning application." *Bd. of Sup'rs of Loudoun County v. Lerner*, 221 Va. 30, 37, 267 S.E.2d 100, 104 (1980).  Therefore, blind conformity with the Comprehensive Plan—which is only a "guide"[2]—is not necessary for the City Council to make a decision based on a "rational basis." *Id.*

The fact that Plaintiffs have included a rational basis for denial in their Complaint is all that is required to make their Complaint defective and insufficient as a matter of law.  The fact that they allege competing facts to cast doubt on the correctness of City Council's decision misses the point of the zoning process being a legislative one.  The Supreme Court of Virginia sustained a demurrer by looking to documents attached to a plaintiff's Complaint in *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 620, 628 S.E.2d 298, 307 (2006).  In *Eagle Harbor, L.L.C.*, conflicting expert reports were attached to a complaint challenging the locality's legislative decision setting sewer connection fees.  *Id.* at 618, 628 S.E.2d at 306.  The Court acknowledge that one report was favorable to the plaintiff and tended to show unreasonableness of the sewer connection fees.  *Id.*  "However, by incorporating the County Report in their pleading, the [plaintiffs] also presented facts showing the reasonableness of the fees to the trial court."  *Id.*  The Court sustained the locality's demurrer on the following basis:

> The trial court thus had before it facts reflecting that the fees were not "fair and reasonable" and offsetting facts showing that the fees were reasonable as its letter opinion notes: "the facts stated by Eagle Harbor ... would appear to support the very debatability of the County's enactment of the fees." As such, there was "evidence of reasonableness ... sufficient to make the question fairly debatable," thus "the legislative action must be sustained."  Accordingly, the trial court did not err in sustaining the demurrer[.]

---

[2] A comprehensive plan "is not a zoning ordinance but only a guideline for zoning ordinances." *Bd. of Sup'rs of Stafford County v. Safeco Ins. Co. of Am.*, 226 Va. 329, 335, 310 S.E.2d 445, 448 (1983).

*Id.* at 619, 628 S.E.2d at 307 (internal citations omitted). "Under such circumstances, it is not the property owner, or the courts, but the legislative body which has the prerogative to choose" the appropriate zoning of property. *County Bd. of Arlington County v. Bratic*, 237 Va. 221, 229, 377 S.E.2d 368, 372 (1989) (citations omitted).

Because the City Council's decision to deny the rezoning of Plaintiffs' property was fairly debatable, as reflected within the four corners of the Complaint, the Plaintiffs' equal protection claim fails as a matter of law.

> 2.   The Plaintiffs Have Failed to Adequately Plead That the City Council Intentionally and Purposefully Discriminated Against Them in Denying Their Rezoning Application

"To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995). "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it *an element of intentional or purposeful discrimination.*" *Id.* (emphasis in original) (citations omitted). "[T]he plaintiff has the burden of establishing that a [discriminatory] classification introduced through administrative action was 'clear and intentional.'" *Id.*

In *Sylvia Development Corporation*, the district court dismissed on summary judgment a developer's equal protection claim that his zoning project was denied due to his national origin—being a Czech immigrant. *Id.* at 824–25. The Fourth Circuit underwent a lengthy review of whether there were facts in the record to support the claim that the County Board denied the developer's request due to his nationality. *Id.* at 821–25. Despite citizen comments, and

comments by the local decision-making body, regarding "out-of-county developers" and people "coming in here" from elsewhere to develop the locality, the Fourth Circuit found that there was insufficient evidence of intentional discrimination. *Id.* In explaining its ruling, the Court held "[i]f disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim." *Id.* at 825.

In this case, the Plaintiffs only baldly claim in one sentence that "Council intentionally and purposefully discriminated against Owners in denying the 2018 Application." (Doc. 1 ¶ 43.) But beyond this one bare allegation, there are no facts in the Complaint to support an intentional discrimination claim. The facts, as pled by Plaintiffs, show only that the City Council voiced reasonable concerns about the impacts of the Plaintiffs' proposed development and that other rezoning projects were approved with different zoning classifications at very different periods of time.

Unlike even the unsupported claims in the *Sylvia Development Corporation* case, there are *no* allegations in the Complaint that the Plaintiffs were singled out because of their status of being in a protected class (race, sex, national origin, etc.). Nor do the Plaintiffs plead that they were intentionally singled out to be treated differently *on any prohibited basis*. Plaintiffs merely recite in their Complaint that there are six other properties in the City which have been developed over the last 60 years, which have *some* similar characteristics to the Plaintiffs' property.

At the same time, on the face of the Complaint, the Plaintiffs acknowledge that the City Council voted to deny their rezoning application for three separate, rational reasons. The first

9

Case 2:21-cv-00491-RAJ-DEM   Document 8   Filed 09/30/21   Page 10 of 18 PageID# 53

reason for denial was that the project would create traffic and school capacity impacts.[3] (Doc. 1 ¶ 25, 28; Ex. B. at 1–2.) The second reason for denial was that the Council believed the property could be developed under its current zoning. (Doc. 1 ¶ 25, 28.) And the third reason for denial was that the Property had poor drainage and would be subject to flooding. (Doc. 1 ¶ 25–28; Ex. B.) Whether or not these bases for denial would ultimately be substantiated by evidence, they are certainly not evidence or allegations of intentional discrimination.

Even if the Plaintiffs could point to similarly situated property owners who received approvals from City Council—which they have failed to do—the Plaintiffs cannot simply rely on other projects being approved to *infer* intentional discrimination. The Fourth Circuit has clearly held that "[t]o prove that a statute has been administered or enforced discriminatorily, *more must be shown* than the fact that a benefit was denied to one person while conferred on another." *Sylvia Dev. Corp.*, 48 F.3d 810, 819, 825 (emphasis added) ("a showing of such disparate treatment, even if the product of erroneous or illegal state action, *is not enough by itself* to state a constitutional claim"). The Plaintiffs failed to plead something "more" than disparate treatment to support their equal protection claim. For that reason, Count I of the Complaint should be dismissed.

       3.      <u>The Plaintiffs Have Failed to Sufficiently Identify Similarly Situated Property Owners to Support Their Equal Protection Claim</u>

"[A] party can bring an equal protection claim by alleging that it had been intentionally treated differently from others similarly situated and that there was no rational basis to support the different treatment." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322,

---

[3] The Plaintiffs characterize the traffic and schools impacts as the Council merely complaining about the City's "LOS," or level of service, policy being "out of date." Whether or not they are substantiated, the Council's stated rational basis for denial—traffic and school impacts—is stated in Plaintiffs' Exhibit B at pages 1 to 2.

328 (4th Cir. 2005). Although there is no uniform definition of what it means to be a "similarly situated" property owner, when comparing properties, courts have required that numerous characteristics align. *See, e.g., Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 591–93, 544 S.E.2d 334, 339–40 (2001) (property size, type of uses allowed, access to public roads, number access points, road access length, traffic, screening, parking requirements); *Helmick v. Town of Warrenton*, 254 Va. 225, 231, 492 S.E.2d 113, 116 (1997) (subdivision plat status); *Sowers v. Powhatan Cnty., Virginia*, 347 F. App'x 898, 901–02, 2009 WL 3359204, at *3 (4th Cir. 2009) (citizen opposition, traffic, interpersonal relations of applicant, recusal of decision maker); *Sunrise Corp. of Myrtle Beach*, 420 F.3d at 328–29 (type of building); *Tri County Paving, Inc.*, 281 F.3d at 440 (similarity in type of permit being requested).

The Complaint specifically identifies the following projects as being "similarly situated" to their application: Riverwalk, Hunters Glen, Wickford, Les Chateaux, Glenleigh, and Knell's Ridge. (Doc. 1 ¶¶ 41, 42.) However, due to these projects being approved at either vastly different points in time, for different zoning classifications, and at different physical locations in the City, they cannot be considered "similarly situated" to the zoning approval sought by Plaintiffs.

In this case, the Plaintiffs sought to rezone the Property from multiple zoning classifications to the following: B-1 (neighborhood business), R-MF-1 (multifamily residential), and C-1 (conservation). (Doc. 1 ¶¶ 9, 14, 21.) This zoning would authorize the Plaintiffs to construct 153 single family and townhouse units and 11,300 square feet of commercial space on the Property. (Doc. 1 ¶ 21.) The Complaint, however, indicates that almost all supposedly "similar" projects had different zoning classifications and only residential structures of varying sorts. (Doc. 1 ¶ 11, 12, 20; Doc. 1 Ex. C.)

11

The Complaint correctly indicates that Riverwalk was approved as a "Planned Unit Development" ("PUD") containing single-family residences, townhomes, duplexes, and multi-plex condominiums.  (Doc. 1 ¶ 11.)  PUDs are unique, identifiable, zoning districts that contain multiple different residential, office, commercial, open space, or industrial uses.  Chesapeake Zoning Ordinance ("CZO") § 11-300.  The PUD zoning classification (CZO Article 11) is distinct from and not interchangeable with the completely different zoning classifications sought by Plaintiffs in this case, which are regulated under separate zoning provisions (CZO Articles 6, 7, and 10).

The Hunters Glen, Wickford, and Glenleigh developments, consisting "of either townhomes or condominiums" are also zoned to different classifications than the three sought by Plaintiffs.  (Doc. 1 ¶ 12.)  Complaint Exhibit C indicates that these properties, "across Great Bridge Boulevard," were zoned to the R-TH-1 (townhouse residential) classification.  One other property, likely Les Chateaux, was zoned to the R-MF-1 zoning classification, which is similar to only one of the three different classifications sought by the Plaintiffs in this case.  Because the Plaintiffs' proposed rezoning is seeking three separate and distinct classifications, it is a unique project not "similarly situated" to the other approvals.  Furthermore, adjacency alone is insufficient to make these properties similarly situated.  *McDonald's Corp.*, 261 Va. at 591, 544 S.E.2d at 339 ("[t]hat the properties in question are adjacent to one another is insufficient alone to establish a zoning discrimination claim."); *accord Helmick*, 254 Va. at 231, 492 S.E.2d at 116.

Even amongst only residential zoning classifications found in the CZO, the differences between them cannot be overstated.  With each zoning classification comes a myriad of different development regulations controlling lot size, the size and location of structures, road access, screening, parking, and setbacks, for example.  *See* CZO §§ 6-1500, 6-1600, 7-302, 10-302.  If a

property is approved for one zoning classification, the impacts on the neighboring community
will necessarily vary from, and it cannot be considered "similarly situated" to, a differently
zoned property.  These differences become more pronounced when you have, like the
Application in this case, multiple zoning classifications applying to one property.

The Complaint states that Riverwalk, Hunters Glen, Wickford, Les Chateaux, and
Glenleigh, were all "developed" from 1985/1986 through the "late 1990s."  (Doc. 1 ¶¶ 11, 12.)
The Complaint fails to state when the City Council approved each of these developments, and
the Court can only infer, at best, that approvals were still occurring in the 1990s.  This sets these
properties apart from the Plaintiffs' application because they were approved at a vastly different
times.  They, at the latest, would have been approved over 20 years prior to City Council denying
Plaintiffs' Application in this case.  As traffic, drainage, schools, and other public infrastructure
needs would have drastically changed during that time, these properties cannot be used as
examples of "similarly situated" properties.

Plaintiffs' reference to the Knell's Ridge project as a similar property is woefully
inadequate.  It is the only project approved within a similar timeframe to when the Plaintiffs'
Application was in consideration (still four years prior to the City Council denial in this case).
However, the Complaint fails to even state whether Knell's Ridge was a residential rezoning,
what type(s) of residential structures were part of the rezoning, and what zoning classification
was approved.  The Complaint merely states that the "development of 151 units" was approved
approximately 1.3 miles away from the Property.  (Doc. 1 ¶ 20.)  It does not state even whether
the "units" approved were the same type of units sought by Plaintiffs.

Given that Knell's Ridge is more than a mile away from the Property, this fact alone is
enough to show that it is not similarly situated to the Plaintiffs' Property.  Much smaller

differences in location and public road access have resulted in courts finding that a property is not similarly situated. *McDonald's Corp.*, 261 Va. at 591, 544 S.E.2d at 339. Being situated so far apart results in different impacts on public facilities like schools and roads. *See id.*

Finally, of all the supposedly "similar" projects identified by Plaintiffs, none of them are alleged to contain a commercial component. This sets these other approvals far apart and distinct from the Plaintiffs' Application, which sought B-1 zoning to include a commercial structure approximately 11,300 square feet in size. This significant distinction alone should be enough to set the Property apart as not being "similarly situated."

Because the various projects identified by Plaintiffs are not "similarly situated," the Plaintiffs' equal protection claim must fail.

**B.      Count Two of The Complaint Should Be Dismissed as Time Barred**

Plaintiffs additionally challenge City Council's denial of the Application on the basis that City Council violated Virginia Code § 15.2-2208.1 because the denial is "based upon … an unconstitutional condition." (Doc. 1 ¶¶ 45–49.) However, Count II is time barred because actions pursuant to Virginia Code § 15.2-2208.1 must be filed within 30 days of the City Council's action, and this action was filed approximately 19 months later.

Virginia Code § 15.2-2208.1(C) states that challenges to rezoning denials, like the Plaintiffs' Application, must be "filed within the time limit set forth in . . . subsection F of § 15.2-2285…" Subsection F in Virginia Code § 15.2-2285 states that "[e]very action contesting a decision of the local governing body adopting or failing to adopt a proposed zoning ordinance or amendment thereto . . . shall be filed within thirty days of the decision…."

According to the Complaint, the City Council denied Plaintiffs' Application on January 21, 2020. Applying the 30-day limitations period stated above, Plaintiffs had until February 20,

14

2020, to challenge City Council's denial of the Application under Virginia Code § 15.2-2208.1. This lawsuit was filed approximately 19 months too late for Plaintiffs to resurrect any cause of action under Virginia Code § 15.2-2208.1.

**C.     Count Two of The Complaint Should Be Dismissed For Failure to Adequately State a Claim Upon Which Relief May be Granted**

Plaintiffs failed to state a claim upon which relief may be granted in Count II as to alleged violations of Virginia Code § 15.2-2208.1.A.

The unconstitutional conditions doctrine states that "the government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation With Representation of Wash*., 461 U.S. 540, 545 (1983) and *Shin v. Commonwealth*, 294 Va. 517, 524, 808 S.E.2d 401, 405 (2017) (citing *City of Alexandria v. Texas Co.*, 172 Va. 209, 217, 1 S.E.2d 296, 299 (1939)).

The law applying the unconstitutional conditions doctrine to land use is enshrined in a series of cases which, taken together, form the *Nollan-Dolan-Koontz* test. *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987); *Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Koontz v. St. Johnson River Water Management District*, 133 S. Ct. 2586 (2013). Under this test, in a land use application where the local government has discretion and imposes a condition precedent to the granting of a "permit," there must be: 1) an "essential nexus" between the condition imposed and the purpose of the restriction; 2) the condition must be "roughly proportionate" to the proposed impact; and 3) there must have been a physical (in-kind) or monetary exaction required of the applicant. Therefore, an unconstitutional condition in the land use context is any in-kind or monetary exaction demanded by a local government having discretionary authority where there is no essential nexus between the condition imposed and the purpose of the restriction and that is not roughly proportionate to the proposed impact.

15

Shortly after the *Koontz* decision, the General Assembly enacted Virginia Code § 15.2-2208.1 referring to the law as the "*Koontz* Remedy Bill."  As stated in paragraph 46 of the Complaint, § 15.2-2208.1 grants to an applicant, in the case of a denial based upon an unconstitutional condition, "compensatory damages" and an order on remand to the local governing body directing them "to grant or issue such permits or approvals without the unconstitutional condition" as well as "reasonable attorney's fees and costs."  Due to this statute, if a local government denies an application based on the refusal of an applicant to comply with an unconstitutional condition, then the denial violates Virginia Code § 15.2-2208.1.

In this case, the Plaintiffs have failed to identify in their Complaint any imposition of an unconstitutional condition by Chesapeake City Council.  Plaintiffs half-heartedly refer to vague notions of "violation[s] of Owners' Equal Protection rights under the Fourteenth Amendment to the United States Constitution" and "all potential reasons which might be cited as the basis for such denial" as the bases for violation of Virginia Code § 15.2-2208.1.  (Doc. 1 ¶¶ 47, 48.)  However, in the Plaintiffs' equal protection analysis, (Doc. 1 ¶¶ 1–44,) the Plaintiffs never identify any condition imposed by the City Council, let alone a condition which would violate the *Nollan-Dolan-Koontz* test.

Plaintiffs' oblique attempt to assert that an "unconstitutional condition exists" because the City Council, in exercising its discretion in land use and zoning decisions, denied its application when City Council had approved other "similarly situated" applications is misguided.  The violation of any constitutional right (*i.e.*, equal protection) does not mean that an unconstitutional condition was unlawfully required of an application.  For an unlawful exaction to occur, *the constitutional right being violated must relate to some requirement imposed by the locality that the applicant do in order to obtain approval*.  So simply pleading that their equal

16

protection rights were violated has nothing to do with City Council imposing an unlawful

condition on the approval, which was ultimately denied.

Although City Council identified negative impacts that the Plaintiffs' project would cause

if approved, there is nothing in the Complaint indicating that the City Council required the

applicants to do *anything* in their application to mitigate those impacts.  The Complaint

references "substantial proffers" being voluntarily provided by the Plaintiffs, but no proffered

conditions are identified in the Complaint except for a concept plan.  (Doc. 1 ¶ 21.)  The

Complaint fails to allege that the City Council required or requested any proffered conditions at

all, let alone specific ones that are unconstitutional.  For this reason, Count II must be dismissed.

**D.     Count Three of The Complaint Should Be Dismissed Because The Alleged
        Violations Of Plaintiff's Rights Have Already Occurred And Declaratory Relief Is
        Therefore No Longer Appropriate**

"'[D]eclaratory judgments are designed to declare rights so that parties can conform their

conduct to avoid future litigation,' and are untimely if the questionable conduct has already

occurred or damages have already accrued." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695,

2010 WL 2521374 (E.D. Va. 2010), *aff'd,* 441 F. App'x 166, 2011 WL 3268557 (4th Cir. 2011)

(quoting *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615, 2008 WL 4960451

(E.D. Va. 2008)).  As the Plaintiffs claim that the City Council has already violated their rights

by denying their rezoning Application, a declaration to guide the future conduct of the parties is

no longer possible.  Plaintiffs are already pursuing as part of this litigation causes of action for

deprivation of their civil rights and for violation of a Virginia statute.  Declaratory relief, in

addition to these causes of action, is superfluous and inappropriate.  For these reasons, Count III

of the Complaint should be dismissed.

## CONCLUSION

Based on the foregoing, and the reasons stated in the Motion to Dismiss, this case should

be dismissed.

Respectfully submitted,

**CITY COUNCIL FOR THE CITY OF
CHESAPEAKE, VIRGINIA**


By: _____/s/_____
      Daniel J. Wisniewski
      Assistant City Attorney


Jacob P. Stroman, City Attorney (VSB No. 31506)
Daniel J. Wisniewski, Assistant City Attorney (VSB No. 84624)
OFFICE OF THE CITY ATTORNEY
City of Chesapeake
306 Cedar Road
Chesapeake, Virginia  23322
Telephone:  (757) 382-6586
Facsimile:  (757) 382-8749
jstroman@cityofchesapeake.net
dwisniewski@cityofchesapeake.net


## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, I filed the foregoing Brief in Support with the

Clerk of the Court, and served the same on Plaintiffs' counsel, using the CM/ECF system.


_____/s/_____
      Daniel J. Wisniewski, Esq.