IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| SAS ASSOCIATES 1, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2:21-cv-491-RAJ-DEM |
| | ) | |
| CITY COUNCIL FOR THE CITY OF CHESAPEAKE, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S 12(b)(6) MOTION TO DISMISS**

NOW COME Plaintiffs SAS Associates 1, LLC ("SAS") and Military 1121, LLC ("Military," and together with SAS, "Plaintiffs" or "Owners"), by counsel, and for their response in opposition to the Rule 12(b)(6) Motion to Dismiss filed by Defendant City Council for the City of Chesapeake ("Defendant" or "Council") state the following:

**I.    INTRODUCTION**

Council seeks to dismiss each of Plaintiffs' three claims pursuant to Rule 12(b)(6). Council's arguments as to each of these claims should be rejected and its Motion to Dismiss denied. Council's position confuses the Rule 12(b)(6) and summary judgment standards, seeking to hold Plaintiffs to their much burden of proof on summary judgment or at trial, rather than to the liberal pleading standard of Rule 8. Council also misreads Plaintiffs' Complaint, and because the Motion to Dismiss utilizes an incorrect legal standard, inappropriately challenges factual contentions in the Complaint and asks the Court to make factual determinations. Plaintiffs have alleged detailed facts to support their equal protection, unconstitutional conditions, and declaratory judgment claims sufficient to survive Council's Rule 12(b)(6) Motion to Dismiss.

## II.   STATEMENT OF FACTS

Plaintiffs own several parcels of land in Chesapeake, Virginia, located generally on the southeast corner of the intersection of Great Bridge Boulevard and Fernwood Farms Road (the "Property").  *See* ECF No. 1 at ¶ 3.  In 2018, Plaintiffs filed a rezoning application for the Property, which proposed the building of 153 single family and townhome units, 11,300 square feet of commercial space, and designating 60+ acres for conservation (the "2018 Application"). *See id.* at ¶ 21.  The 2018 Application complied with all existing policies and guidelines, including the Moving Forward – Chesapeake 2035 ("Comprehensive Plan") adopted by the City in 2014, the City's Urban Overlay District ("UOD") guidelines, the Planning and Land Use Policy's Level of Service ("LOS") standards, Virginia's Zoning Ordinance standards, and was compatible with the surrounding community.  *Id.* at ¶¶ 13, 21, 22.  For each of those reasons, the City's Planning Commission recommended approval of the 2018 Application following a public hearing on November 13, 2019.  *Id.* at ¶¶ 22, 23.

On January 21, 2020, the Council held a public hearing on approval of the 2018 Application.  *Id.* at ¶ 24.  At the close of the hearing Councilmember S.Z. "Debbie" Ritter moved to deny the 2018 Application because she believed:

    (i)    the City's LOS standards were outdated,

    (ii)    the Property could be developed under its current zoning, and

    (iii)    the Property was in a sensitive drainage area.

*Id.* at ¶ 25 & Ex. B at 1-2.  Ritter's stated reasons for denial are arbitrary, unsupported by any fact and unrelated to the health, safety, or welfare of the City. *Id.* at ¶ 42.

As to Ritter's first stated reason, the City's LOS standards are not outdated.  The LOS standards were updated as recently as 2015, and were updated and amended multiple times since their adoption in 1995. *Id.* at ¶ 29.  Ritter's second stated reason is no basis for denying the 2018

Application, and indeed, Ritter acknowledged development of the Property under its current zoning is contrary to the Comprehensive Plan and "may not be practical or a good idea." *Id.* at ¶ 25 & Ex. B at 1. Nor could drainage concerns serve as a basis for denying the 2018 Application. Ritter recognized that regulations governing the 2018 Application did not – and could not – require a new development to improve existing drainage, the development simply could not make it worse. *Id.* at ¶ 25 & Ex. B at 2. As explained by the City's Floodplain Administrator, James Tate, the Property could be designed so it would not have a negative impact on drainage. *Id.* at ¶ 26 & Ex. B at 4. Additionally, all potential reasons cited by the Council in denying the 2018 Application were refuted by Owners' agent, W. P. Burkhimer, Jr. *Id.* at ¶ 48. Councilmember Dr. Ella Ward seconded the motion to deny the 2018 Application, citing only general concerns with sea level rise and flooding over the past 15 to 20 years as her reason supporting denial of the 2018 Application. *Id.* at ¶ 27 & Ex. B at 2. No other councilmember gave any reasons for voting to deny the 2018 Application, which was denied on a 7-2 vote. *Id.* at ¶ 27.

The Complaint sets forth in detail that Council previously approved numerous developments similar to the development plan in the 2018 Application, including Riverwalk, Hunters Glen, Wickford, Les Chateau, Glenleigh, The Pillars, and Knell's Ridge (collectively, the "Comparator Properties"). *Id.* at ¶¶ 12, 20, 45. Riverwalk is adjacent to the Property on its east side, was developed from 1986 through the late 1990s, and contains a mix of single family residences, townhomes, duplexes, multi-plex condominiums. *Id.* at ¶ 11. On the southside of the Property is Fernwood Farms, developed in the mid-1960s, and Fernbridge, developed in the early 2000s. *Id.* Just across Great Bridge Boulevard from the Property are Hunters Glen, Wickford, Les Chateaux, and Glenleigh. *Id.* at ¶ 12. These developments were established between 1985 through the late 1990s, consisting of either townhomes or condominiums. *Id.* In 2009 Council

3

approved construction of The Pillars, an apartment complex located in a much higher density and traffic area than the Property. *Id.* Council also approved the Knell's Ridge rezoning as recently as 2016, authorizing development of 151 units on land located just 1.3 miles from the Property. *Id.* at ¶ 20. Whether these other developments are similarly situated properties is a factual issue that, despite Council's incorrect assertions, cannot be decided on a motion to dismiss.

Council's decision to treat the Property differently than similarly situated zoning projects and deny the 2018 Application violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at ¶¶ 40-44. Further, because Council could not require Plaintiffs to improve pre-existing drainage issues, Owners' inability to satisfy Council denied the 2018 Application. *See Id.* at ¶¶ 25, 27 & Ex. B at 2. Council's denial was thus based, at least in part, on an unconstitutional condition that drainage be made better, in violation of Va. Code § 15.2-2208.1. *Id.* at ¶¶ 25, 27, 45-49.

### III.    STANDARD OF REVIEW

A complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Only if the complaint fails to state a claim upon which relief can be granted, may the complaint or any claims therein be dismissed. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must clear the necessarily "low bar" of satisfying Rule 8. *Prynne v. Settle*, 848 F. App'x 93, 103 (4th Cir. 2021).

At the pleading stage, the plaintiff need only aver "allegations plausibly suggesting . . . that the pleader is entitled to relief" giving "fair notice" of the nature of the claim to the defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 557 (2007). A pleader need not "set out in detail the facts upon which he basis his claim." *Id.* at 555 n.3. The pleading's factual contentions need only "raise [a plaintiff's] right to relief above the speculative level." *Id.* at 555.

4

Plaintiffs' Complaint asserts detailed facts far and above that which is required by Rule 8 showing they are entitled to relief. Notably, Council does not raise a *Twombly/Iqbal* challenge to the Complaint.

## IV. ARGUMENT

### A. Plaintiffs Allege Sufficient Facts to State an Equal Protection Claim

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 352 (1918). In essence, the equal protection clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). The Supreme Court has recognized that a valid equal protection claim can be "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Thus, to state an equal protection claim, Plaintiffs need only allege "(1) they have been treated differently than others whom they are similarly situated and (2) the unequal treatment was the product of intentional or purposeful discrimination." *High Peak Partners, LLC v. Bd. of Supervisors*, No. 3:07CV757-HEH, 2008 U.S. Dist. LEXIS 30415, at *29 (E.D. Va. April 14, 2008) (citing *Morrison v. Garraghty*, 239 F.3d 648, 653 (4th Cir. 2001)).

Council makes three main arguments to support their contention that the Complaint fails to state an equal protection claim. Council's arguments, however, cannot be appropriately resolved in its favor, as a matter of law, particularly at this juncture. First, Council argues that because two Council members proffered reasons for denying the 2018 Application, there exists a

5

rational basis for its denial. ECF No. 8 at 4-8. Second, Council avers that the Complaint fails to sufficiently plead intentional or purposeful discrimination. *Id.* at 8-10. Third, Council contends Plaintiffs have failed to state the Property was treated differently from other, similarly situated properties. *Id.* at 10-14. Council misreads the Complaint and confuses the applicable pleading standard. As a result, Council erroneously asks this Court to hold Plaintiffs to their ultimate burden of proof. Similarly, Council's arguments require this Court to look beyond the four corners of the Complaint and inquire into the substantive merit of Plaintiffs' factual allegations. Such determinations are not appropriately resolved as a matter of law or on a motion to dismiss. This Court must accept Plaintiffs' factual allegations as true and deny Council's Motion to Dismiss Plaintiffs' equal protection claim.

Almost all the case law Council cites in support of its positions involve cases resolved by summary judgment or following trial. Council's authorities, therefore, do not aid the Court in its assessment of Council's Motion to Dismiss.[1] As this Court knows, summary judgment can only

---

[1] Of the cases Council cites, only *Eagle Harbor L.L.C. v. Isle of Wight County* addresses a challenge to initial pleadings by demurrer or motion to dismiss. *See* ECF No. 8 at 7-8. *Eagle Harbor L.L.C.*, however, does not include an equal protection claim, and addresses only a claim under Va. Code § 15.2-2119. *See* 271 Va. 603, 613 n.4, 328 S.E.2d 298, 303 n.4 (Va. 2006) (rejecting plaintiffs' argument that the court should apply the rationale of another court's decision on an equal protection claim). Every other case Council cites in support of its Motion to Dismiss the equal protection claim are summary judgment or post-trial appeal decisions. *See* ECF No. 8 at 5 (quoting *Sowers v. Powhatan Cty.*, 347 F. App'x 898 (4th Cir. 2009) (affirming decision on summary judgment)); ECF No. 8 at 5 (quoting *Schefer v. City Council of City of Falls Church*, 279 Va. 588, 691 S.E.2d 778 (2010) (affirming decision on summary judgment)); ECF No. 8 at 6 (quoting *Bd. of Supervisors of Fairfax Cty. v. Robertson*, 266 Va. 525, 587 S.E.2d 570 (Va. 2003) (reversing final judgment of the trial court)); ECF No. 8 at 7 (quoting *Bd. of Supervisors of Loudon Cty. v. Lerner*, 221 Va. 30, 267 S.E.2d 100 (Va. 1980) (reversing final judgment of the trial court)); ECF No. 8 at 8 (citing *Cty. Bd. of Arlington Cty. v. Bratic*, 237 Va. 221, 377 S.E.2d 368 (Va. 1989) (reversing final judgment of the trial court)); ECF No. 8 at 8-10 (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810 (4th Cir 1995) (affirming decision on summary judgment)); ECF No. 8 at 10 (citing *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322 (4th Cir. 2005) (affirming the lower court's decision on summary judgment); ECF No. 8 at 11 (citing *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583 (2001) (overruling the lower court's final judgment); ECF No. 8 at 11 (citing *Sowers v. Powhatan Cty.*, 347 F. App'x 898 (4th

be granted on the ultimate issues, after complete discovery, when no disputes of material fact exist. *See, e.g.*, *Willis v. Town of Marshall*, 426 F.3d 251, 264 (4th Cir. 2005) (overturning premature summary judgment because plaintiff had no opportunity to discover facts to support her equal protection claim in defendant's exclusive possession). Council asks this Court to appraise the underlying factual merits of Plaintiffs' equal protection claim rather than do what it must – determine whether Plaintiffs' claim is "plausible on its face" after accepting all Plaintiffs' factual assertions as true and viewing those facts in a light most favorable to Plaintiffs. *See Bell Atl. Corp.*, 550 U.S. at 555; *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, Judge Henry E. Hudson's opinion in *High Peak Partners, LLC* illustrates the threshold for stating a plausible equal protection claim necessary to survive a Rule 12(b)(6) motion to dismiss. 2008 U.S. Dist. LEXIS 30415. In *High Peak Partners, LLC*, the court found that plaintiffs' allegation that a decision by Stephen McBride, the Prince George County utilities director, not to submit plaintiffs' first water agreement to the county Board of Supervisors for approval was all that was required to sufficiently state a claim. *Id.* at *4, *29. Plaintiffs there made only conclusory allegations, and averred no specific facts, regarding the treatment of others similarly situated or about the utilities director's motives. *Id.* at *29. The court nonetheless stated:

> High Peak and Dickens Creek have not specifically pled which similarly situated parties were treated differently by McBride or the County. Nor does their Complaint provide a glimpse of any evidence to support the allegations that McBride or the Board's actions were improperly motivated. They need not do so, however, at this stage of the litigation.

*Id.* at *29-30 (noting also that plaintiffs will bear their burden of proof moving forward).

---

Cir. 2009) (affirming the lower court's decision on summary judgment); ECF No. 8 at 11 (citing *Tri-County Paving, Inc. v. Ashe Cty.*, 281 F.3d 430 (4th Cir. 2002) (affirming the lower court's decision on summary judgment)).

Plaintiffs here have alleged significantly and specifically more than in *High Peak Partner, LLC*. Plaintiffs' Complaint pleads specific facts of other similarly situated developments that were treated differently, including the Hunters Glen, Wickford, Les Chateaux, Pillars, Glenleigh, and Knell's Ridge developments. ECF No. 1 at ¶¶ 12, 20. Plaintiffs have also asserted facts evidencing Council's improper motive. Council's rejection of its own established guidelines – the LOS standards and the Comprehensive Plan – so that it could deny the 2018 Application is a strong indicator of Council's intent. *Id.* at ¶¶ 25, 29. Indeed, guidelines such as the LOS standards and the Comprehensive Plan are tools utilized to ensure uniformity and fairness in Council's zoning decisions. Council's outright rejection of these guidelines speaks volumes, and certainly satisfies the intent pleading requirement in Plaintiffs' equal protection claim. Plaintiffs' factual allegations are more than adequate to state a plausible equal protection claim. *Vill. of Willowbrook*, 528 U.S. at 564 (reciting the elements of an equal protection claim in affirming the Seventh Circuit's reversal of the trial court's decision to grant defendant's motion to dismiss plaintiff's equal protection claim).

    **1. The Complaint alleges Council's decision lacked a rational basis.**

Council's argument that the Complaint itself establishes a rational basis for denying the 2018 Application misreads and is directly contradicted by the Complaint's factual allegations. *See* ECF No. 8 at 4-8. As an initial matter, it is important to note that whether Council's decision is ultimately held rational is not at issue as to the pleading adequacy of this Complaint. Plaintiffs need only allege two elements to state their equal protection claim: "(1) they have been treated differently than others whom they are similarly situated and (2) the unequal treatment was the product of intentional or purposeful discrimination." *High Peak Partners, LLC*, 2008 U.S. Dist. LEXIS 30415, at *29 (citing *Morrison*, 239 F.3d at 653). Plaintiffs' allegations easily satisfy both elements.

8

Moreover, the Complaint does plead that Council lacked a rational basis for its denial. The Complaint's recital of Council's purported reasons for denying the 2018 Application does not mean that those reasons actually constitute a rational basis. Indeed, the Complaint distinctly pleads that Council's three stated reasons for denying the 2018 Application were arbitrary and inadequate. ECF No. 1 at ¶ 25 & Ex. B at 1-2. Council's first reason, that the LOS standards are "out of date," is off base as the LOS standards were updated in 2015, just three years prior to the 2018 Application. ECF No. 1 at ¶ 29. It is not disputed that the 2018 Application complied with the operative LOS standards. *Id.* at ¶ 30. That compliance, noted by the Planning Committee, is a reason for Council to grant, not deny, the 2018 Application. The Complaint likewise sufficiently pleads why Council's second reason, that the Property could be developed under its current zoning, also fails as a reasonable basis to deny the 2018 Application. *Id.* at ¶ 25. Council member Ritter admitted that developing the Property under its current zoning is contrary to the Comprehensive Plan and "may not be practical or a good idea." *Id.* at ¶ 25 & Ex. B at 1. This acknowledgement is also a reason to grant, not deny, the 2018 Application. By using this as a basis for denial, Council implied Plaintiffs should develop the Property under its current zoning, in violation of the Comprehensive Plan, thereby revealing the denial's intentional and arbitrary nature. Guidelines such as the LOS standards and Comprehensive Plan provide a unform framework from which Council can make objective and uniform zoning decisions. Council's rejection of both the LOS standards and Comprehensive Plan, and its resort to development under existing zoning that would be detrimental to the Comprehensive Plan, adequately pleads the irrationality of Council's denial. Plaintiffs have made a detailed factual showing that Council's denial of the 2018 Application was unreasonable. Plaintiffs have also complied with the pleading requirements of *High Peak Partners LLC*. *See High Peak Partners, LLC*, 2008 U.S. Dist. LEXIS 30415 at *30. The Complaint not only alleges that "[d]enying the

9

2018 Application . . . was arbitrary, capricious, and unreasonable," but pleads why. *Id.* at ¶ 41. Taking as true the allegations in the Complaint and construing all reasonable inferences in Plaintiffs' favor, Plaintiff has sufficiently stated Counsel's denial of the 2018 Application lacked a rational basis.

### 2. The Complaint alleges intentional and purposeful discrimination.

Council argues that the Complaint fails to sufficiently plead intentional or purposeful discrimination. *Id.* at 8-10. Council relies entirely on *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810 (4th Cir 1995), for its position. The *Silvia Dev. Corp.* decision is an appeal from summary judgment that was granted by the district court. *Sylvia Dev. Corp.*, 48 F.3d at 815. It, therefore, does not address what Plaintiffs are required to *plead* in their Complaint, rather than *prove* on summary judgment.

Council's accusation that "Plaintiffs only baldly claim in one sentence that 'Council intentionally and purposefully discriminated against Owners in denying the 2018 Application'" is incorrect. ECF No. 8 at 9 (quoting ECF No. 1 at ¶ 43). First, *High Peak Partners, LLC* confirms that this type of allegation is sufficient to state an equal protection claim. 2008 U.S. Dist. LEXIS 30415, at *29 (finding plaintiffs sufficiently asserted an equal protection claim even though "their Complaint provide[s no] glimpse of any evidence to support . . . [defendants'] actions were improperly motived"). The rationale for this pleading standard is consistent with the context of an equal protection claim. Plaintiff need not allege specific facts where it has not had an opportunity to discover those facts. *Id.* at *30 (citing to *Willis v. Town of Marshall*, 462 F.3d 251, 264 (4th Cir. 2005) (overturning premature summary judgment because plaintiff had no opportunity to discover facts in defendant's exclusive possession)).

Moreover, Council's argument ignores the Complaint's well-pleaded facts and reasonable interferences that support intentional and purposeful discrimination. Council's denial of both the

10

2016 and 2018 Applications that met all applicable criteria for approval constitute sufficient factual allegations as to intentional discrimination. *See* ECF No. 1 at ¶¶ 14-19, 21-24. The Owners further allege that these denials occurred at the time Council approved the development of Knell's Ridge, a similar development within the Property's immediate vicinity. *Id.* at ¶ 20. Further, and as discussed *supra*, the Owners sufficiently plead the lack of support for Council's stated reasons for denial, indicating an improper motive of intentional and purposeful discrimination. These allegations, coupled with all reasonable inferences of improper motive that can be drawn from them, are more than sufficient at the motion to dismiss stage.

Council also takes issue with Plaintiffs not alleging discrimination because they are members of a protected class. *See* ECF No. 8 at 9. Plaintiffs are a class of one, a class which has been explicitly recognized by the Supreme Court as deserving of equal protection. *See Vill. of Willowbrook*, 528 U.S. at 564 (U.S. Supreme Court recognizes "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). Plaintiffs need not assert Council discriminated against them because of their inclusion in an identified protected class, such as race, religion, or national origin, in order to plead and prosecute an equal protection claim. Plaintiffs need only plead that they were treated differently from others due to intentional or purposeful discrimination. *High Peak Partners, LLC*, 2008 U.S. Dist. LEXIS 30415, at *29 (citing *Morrison*, 239 F.3d at 653). Plaintiffs Complaint sufficiently pleads all the required elements of an equal protection claim necessary to survive Council's Motion to Dismiss.

### 3. Plaintiff has properly identified similarly situated developments.

Council next challenges Plaintiffs' identification of developments that are similarly situated to the Property. At the pleading stage, Plaintiffs are not required to specifically identify

*any* others similarly situated. *See High Peak Partners, LLC*, 2008 U.S. Dist. LEXIS 30415, at *29-30 (noting plaintiffs need not "specifically plead which similarly situated parties were treated differently by [defendant] . . . at this state of the litigation"). Plaintiffs, however, have identified several similarly situated developments. ECF No. 1 at ¶¶ 11-12, 20, 41-42. Confusing the motion to dismiss and summary judgment standards, Council prematurely challenges Plaintiffs' assertion that these developments are similarly situated to the Property. Whether the Comparator Properties identified in the Complaint are ultimately found "similarly situated" is necessarily a fact-intensive inquiry, one that is not appropriately addressed on a motion to dismiss or as a matter of law.

Notwithstanding that Plaintiffs have pled far more than is required to state an equal protection claim, Council relies primarily on differences in timing and location between the similarly situated developments to challenge their similarity to the Property. ECF No. 8 at 11. There exists no cut-and-dry standard for determining whether properties are similarly situated. Rather, courts and juries properly consider a number of factors to assess whether a property's comparators are sufficiently similar. *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 591, 544 S.E.2d 334, 339 (Va. 2001) (finding, following a bench trial, the comparator property not similar because of substantial size differences of 1.2 acres versus 15.28 and 7.46 acres; property at issue was single-use whereas the comparator properties were multiple use sites, and the comparator properties had access to service roads which the property at issue did not). Indeed, the specific *factual* circumstances of the subject property and the similar properties must be evaluated on a case-by-case basis to determine whether the Comparator Properties may be considered similarly situated to the 2018 Application's proposed development plan. Such a fact-focused determination cannot be made at the motion to dismiss stage.

In support of this contention, Council again relies almost entirely on cases in which final judgment was entered following a full assessment of the evidence. *See* ECF No. 8 at 10 (citing *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322 (4th Cir. 2005) (affirming the lower court's decision on summary judgment); ECF No. 8 at 11 (citing *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583 (2001) (overruling the lower court's final judgment); ECF No. 8 at 11 (citing *Sowers v. Powhatan Cty.*, 347 F. App'x 898 (4th Cir. 2009) (affirming the lower court's decision on summary judgment); ECF No. 8 at 11 (citing *Tri-County Paving, Inc. v. Ashe Cty.*, 281 F.3d 430 (4th Cir. 2002) (affirming the lower court's decision on summary judgment)). The only case Council cites that addresses similarly situated properties on the face of a complaint, and in the context of a motion to dismiss, is *Helmick v. Town of Warrenton*, 254 Va. 225, 492 S.E.2d 113 (Va. 1997).

In *Helmick*, the Supreme Court of Virginia assessed whether the trial court properly sustained a demurrer to a complaint that challenged the Town of Warrenton's refusal to consent to the vacation of a subdivision plat. *Id.* at 227. *Helmick* affirmed the lower court's decision to sustain a demurrer because the only allegation supporting that the properties were similarly situated was their adjacency to one another. *Id.* at 231. The complaint in *Helmick* provided no other indicators of similarity. *Id.* The Court found that "[a]djacency alone is insufficient to establish a zoning discrimination claim." *Id.* (citing *Bd. of Supervisors of James City Cty. v. Rowe*, 216 Va. 128, 140 (1975). Plaintiffs have alleged much more than mere adjacency in the Complaint, providing facts as to the similarly situated developments. It also bears mention that *Hemlick* is a Virginia state court case, governed by Virginia pleading rules, not entirely consistent with this Court's standards under Rule 8 and Rule 12. The Plaintiffs in *Hemlick* also did not plead an equal protection claim, but rather due process/impermissible taking claims. Even under *Helmick*, though, Plaintiffs have sufficiently pleaded an equal protection claim.

13

Council cites to the timing of each development as a main reason the Comparator Properties are not similarly situated. ECF No. 8 at 13. Council does not, however, refer to single case or point to any authority establishing that timing of approval governs the determination of similarity. Employing that timing argument, Council contends that "traffic, drainage, schools, and other public infrastructure needs would have drastically changed during that time." *Id.* That contention is nowhere found in the Complaint and Council's conclusion about the changing needs of the community is speculation that cannot support a motion to dismiss. Indeed, through this argument, Council seeks to deprive Plaintiffs of their right to all reasonable inferences, and create their own inferences that lack foundation in the Complaint's allegations.

Council also contends that adjacency to the Property alone is insufficient to satisfy the "similarly situated" element, on a motion to dismiss. *Id.* at 12. Most of the Comparator Properties are near the Property, which certainly merits consideration, but the Complaint pleads much more than "adjacency *alone*." *See Helmick*, 252 Va. at 231 (emphasis added) (granting defendants' demurrer because the only similarity cited by the complaint was adjacency). The Complaint alleges substantially more similarities than mere adjacency. The proposed development area in the 2018 Application and all the Comparator Properties are similar, and almost all Comparators likewise contain a mix of residential property types. *See* ECF No. 1 at ¶¶ 11-12, 20, 45. All but one of the Comparator Properties' traffic flows directly onto the same main road as the Property's proposed development, Great Bridge Boulevard. *Compare id.*, Ex. A *with id.*, Ex. C. Further, Plaintiffs allege that Council approved the Knell's Ridge rezoning as recently as 2016, authorizing development of 151 units on land located just 1.3 miles from the Property. *Id.* at ¶ 20. Incongruously, as to Knell's Ridge, Council switches positions and argues that because that development is *not* adjacent to the Property, it is not an appropriate comparator.

14

ECF No. 8 at 13. Of course, Council offers no authority for its contention that, as a matter of law, a comparator property *must be* adjacent to the property at issue in order for it to be substantially similar. The Knell's Ridge development is less than a mile and a half from the Property and it contains 151 residential units, almost identical to the 153 residential units that Council voted down in the 2018 Application.[2] *See* ECF No. 1 at ¶¶ 20-21. Plaintiffs' allegations on Knell's Ridge alone satisfy the pleading requirements for their equal protection claim.

Straying far beyond the four corners of the Complaint, Council attempts to fashion differences between the proposed Property development and the Comparator Properties as a reason to grant its Motion to Dismiss. Council essentially contends that, because the Property and the Comparator Properties are not perfectly identical, they cannot be similar. Council's standard for similarity, however, would never render a property sufficiently similar to serve as a comparator for purposes of an Equal Protection claim predicated on a zoning challenge. Indeed, the unique nature of property dictates that two parcels cannot be identically located, developed at exactly the same time, or otherwise identical. To be sure, this is exactly why comparators need only be "similarly" situated. How similar is a fact-based inquiry that must be decided by a finder of fact. The Complaint sufficiently alleges similarities between the Property and the Comparator Properties to show Plaintiffs were treated differently than others similarly situated.

### B. Plaintiffs Have Alleged Facts Sufficient to State an Unconstitutional Conditions Claim

Council contends that Plaintiffs' unconstitutional conditions claims in Count II is time-barred by the thirty-day time restrictions set forth in Virginia Code § 15.2-2285(F). ECF No. 8 at 14-15. Council is incorrect, and Council has waived its right to claim Plaintiffs'

---

[2] Council also contends that the single commercial building tucked into the front corner of the Property's proposed development makes it unique from the similarly situated developments. *See* ECF No. 8 at 14. Nothing in the Complaint, however, provides a basis for this contention.

unconstitutional conditions claim is untimely. Plaintiffs originally filed its unconstitutional conditions claim in the Circuit Court for the City of Chesapeake shortly after Council's denial of the 2018 Application. *See* Petition for Review and Complaint, *SAS Associates 1, LLC, et al v. City Council for the City of Chesapeake, et al.*, Case No. CL20-1899, Circuit Court for the City of Chesapeake. During the state court proceedings, Council never asserted this claim was untimely. Plaintiffs ultimately took a non-suit and subsequently filed the instant action well within six-months of nonsuiting, as well as within the remaining limitations period. *See* Nonsuit Order dated July 30, 2021; Va. Code § 8.01-229(E)(3) ("If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled . . . and the plaintiff may recommence his action within six months"). Council did not raise a limitations argument on Plaintiffs' unconstitutional condition claim within the time prescribed by Virginia Supreme Court Rule 3:8. Therefore, Council has forfeited its right to now contend this claim is untimely.

Council fares no better in attacking the pleading adequacy of Count II. Pursuant to Virginia Code § 15.2-2208.1, Count II alleges that Council's denial of the 2018 Application was based upon an unconstitutional condition. ECF No. 1 at ¶¶ 45-49. Council argues that Plaintiffs have failed to state an unconstitutional condition. ECF No. 8 at 15-17. Council's argument is based on a misapprehension of Plaintiffs' Complaint. Council's argument set forth the broader, traditional unconstitutional condition framework, which typically conditions a benefit on the benefactor's giving up or suppressing a constitutional right. The legislative history shows that Virginia Code § 15.2-2208.1 was enacted in reaction to *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013). Virginia's statute, though, extends beyond the factual circumstances of *Koontz* and "prohibits localities, during rezoning and special permit process, from suggesting proffers or development for public improvements where the need for that improvement is not

16

substantially generated by the project itself." John W. Farrell, Virginia Law Foundation, *Real Estate Transactions in Virginia* 1560 (5th Ed. 2019).

Section 15.2-2208.1 provides "damages for unconstitutional grants *or denial* by locality of certain permits and approvals." Va. Code § 15.2-2208.1 (emphasis added). Councilmembers Ritter and Ward expressed concerns about surrounding water, local flooding, the need to improve drainage. *See* ECF No. 1 at ¶ 25, Ex. B at 2. Ritter specifically stated that she recognized she could not lawfully require Plaintiffs to improve the pre-existing drainage issues. Yet, Ritter and Ward denied the 2018 Application because Plaintiffs did not have to solve those pre-existing drainage concerns. *Id.* Council's denial is all the more unjustified given the statements of James Tate, the City's Floodplain Administrator, that Plaintiffs' proposed development would not make drainage worse. *See* ECF No. 1 at ¶ 26. Nonetheless, the 2018 Application was improperly denied, at least in part, because of drainage concerns that Plaintiffs did not cause and could not legally be made to correct. ECF No. 1 at ¶¶ 25, 27 & Ex. B at 2-3. Stated another way, Council denied the 2018 Application because, as Councilwoman Ritter acknowledged, Council could not lawfully require Plaintiffs to improve the drainage in this area. Therefore, Council's denial was based on an imposition of an unconstitutional condition. In denying the rezoning application because of an unconstitutional drainage requirement, Council arbitrarily, intentionally and wrongly denied the 2018 Application. *See* Farrell at 1560; Va. Code § 15.2-2208.1. As alleged, Plaintiffs have stated a claim pursuant to Va. Code § 15.2-2208.1.

### C. Plaintiffs Have Stated a Claim for Declaratory Judgment

A district court's exercise of its discretionary authority to issue a declaratory judgment "is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty,

17

insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks and citations omitted). Plaintiffs' declaratory judgment claim in Count III seeks a Court declaration voiding Council's unlawful denial of the 2018 Application and requiring Council to correct its arbitrary and unconstitutional denial of the 2018 Application using the proper standards. ECF No. 1 at ¶¶ 50-52. Should Plaintiffs prevail on their claim(s), Plaintiffs will be entitled to a reconsideration of their 2018 Application and Council will be required to adhere to this Court's rulings.

Council contends that declaratory relief is not appropriate because Plaintiffs' cause of action and damage has already accrued. ECF No. 8 at 17. But declaratory relief is appropriate "to declare rights so that the parties can conform their conduct and avoid future litigation" in addition to other claims for past harms. *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 697 (E.D. Va. 2010). Council will be required to reconsider the 2018 Application under the proper framework if Plaintiffs prevail, and declaratory relief setting forth those standards is appropriate in this case.

## V. CONCLUSION

In its Rule 12(b)(6) Motion to Dismiss and supporting memorandum, Council invokes summary judgment arguments, incorrectly attempting to hold Plaintiffs to their ultimate burden of proof, rather than the liberal pleading standard of Rule 8. Council's arguments ask this Court to make evidentiary determinations that contradict the factual allegations in the Complaint, and that are reserved for determination only after full discovery. The Complaint's allegations and the documents attached to it sufficiently plead claims upon which relief can be granted for violations of the Equal Protection Clause, violation Va. Code § 15.2-2208.1's prohibition on unconstitutional conditions, and declaratory relief.

WHEREFORE, Plaintiffs respectfully request that the Court deny the Motion to Dismiss filed by City Council for the City of Chesapeake and issue a Scheduling Order to set this case for trial.

Respectfully submitted,

**SAS ASSOCIATES 1, LLC AND MILITARY 1121, LLC,**

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB # 24021)
Micaylee A. Noreen (VSB # 92433)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Ste. 9000
Norfolk, Virginia 23510
Phone: (757) 640-3716
Fax: (757) 640-3966
rmcfarland@mcguirewoods.com
mnoreen@mcguirewoods.com

M. Ann Neil Cosby (VSB # 42682)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Phone: (804) 775-7737
Fax: (804) 775-1061
acosby@mcguirewoods.com

*Counsel for Plaintiffs SAS Associates 1, LLC and Military 1121, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

                                                 */s/ Robert W. McFarland*
                                                 Robert W. McFarland (VSB No. 24021)
                                                 MCGUIREWOODS LLP
                                                 101 West Main Street, Suite 9000
                                                 Norfolk, Virginia 23510
                                                 Phone: (757) 640-3716
                                                 Fax: (757) 640-3930
                                                 rmcfarland@mcguirewoods.com

                                                 *Counsel for Plaintiffs SAS Associates 1, LLC and Military 1121, LLC*