IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | |
|---|---|
| SAS ASSOCIATES 1, LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY COUNCIL FOR THE CITY OF CHESAPEAKE,<br><br>    Defendant. | Case No: 2:21-cv-00491 |

### REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS

The Defendant City Council for the City of Chesapeake ("City Council"), by counsel; and pursuant to Local Civil Rule 7(F) and the Court's November 2, 2021, Order (Doc. 14); hereby files this Reply Brief to Plaintiffs' Opposition to Defendants' 12(b)(6) Motion to Dismiss.

### STANDARD OF REVIEW

The Plaintiffs erroneously state that "Council does not raise a *Twombly/Iqbal* challenge to the Complaint." (Doc. 10 at 5.) While the City Council did not specifically cite the *Twombly/Iqbal* cases, it made abundantly clear in its 12(b)(6) Motion to Dismiss and Brief in Support, that the basis for the Motion was that the various causes of action pled were either 1) self-defeated by the facts pled by the Plaintiffs,[1] or 2) not supported by "any," "adequate," or "sufficient" factual allegations.[2] The Plaintiffs failed to allege sufficient factual allegations to raise their right to relief "above the speculative level" for both their equal protection and unconstitutional condition claims.

---

[1] Doc. 8 at 6–7, 11, 13–14.
[2] Doc. 8 at 9, 10–11, 13, 16, 17.

The City Council cited many cases that were decided at the summary judgment stage to illustrate the legal elements and related facts required to support the various causes of action pled by Plaintiffs. The Plaintiffs are bound by the factual allegations in their pleadings, and as the City is claiming that many of their factual allegations are self-defeating, it is appropriate for the Court to consider those facts on their merits, similar to summary judgment cases, because the facts are *properly* before the court.³ This does not transform the 12(b)(6) Motion to Dismiss into a summary judgment motion, and it does not prohibit the Court from considering case law with relevant legal analysis and analogous facts.

In any event, the Fourth Circuit has dismissed equal protection claims in the land use context at the 12(b)(6) Motion to Dismiss stage for failure to plead adequate facts, and specifically adopted a pleading standard which is more in line with *Twombly/Iqbal* than the relaxed standard the Plaintiffs cite in *High Peak Partners, LLC v. Bd. of Supervisors*, No. 3:07CV757-HEH, 2008 U.S. Dist. LEXIS 30415, at *29 (E.D. Va. April 14, 2008). *See Bruce & Tanya & Associates, Inc. v. Bd. of Supervisors of Fairfax County, Virginia*, 854 Fed. Appx. 521, 532, 2021 WL 1854750 (4th Cir. 2021) (unpublished opinion); *Greenspring Racquet Club, Inc. v. Baltimore County, Maryland*, 232 F.3d 887 (4th Cir. 2000) (unpublished opinion) (per curiam). In applying the Rule 12(b)(6) standard for equal protection claims in the land use context, discussed in further detail below, the Fourth Circuit cited the same summary judgment cases the City Council cited. *See Bruce & Tanya & Associates, Inc.*, 854 Fed. Appx. at 532–33 (citing *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810 (4th Cir. 1995), *Tri Cnty. Paving, Inc. v. Ashe County*, 281 F.3d 430 (4th Cir. 2002)).

---

³ The Plaintiffs apparently ignore the City Council's position that many of the facts they have pled are properly in the record and are self-defeating. If this case were only about insufficient facts, then summary judgment cases would be less appropriate analogues.

# ANALYSIS

**A.  The Plaintiffs Have Failed to Adequately Allege That Their Equal Protection Rights Have Been Violated**

    1.    <u>The Plaintiffs Have Failed to Adequately Plead That the City Council Intentionally and Purposefully Discriminated Against Them</u>

The Plaintiffs incorrectly rely on the District Court's opinion in *High Peak Partners, LLC*, 2008 U.S. Dist. LEXIS 30415, to conclude that a plaintiff may survive a 12(b)(6) Motion to Dismiss by baldly claiming that they have been purposefully and intentionally discriminated against. To state an equal protection claim against a locality in the "enactment, administration, or enforcement of its laws and regulations" a plaintiff "must plead facts that, accepted as true, would allow the court to draw the reasonable inference that the government's enforcement process had a discriminatory effect and that it was motivated by a discriminatory purpose." *See Bruce & Tanya & Associates, Inc.*, 854 Fed. Appx. at 532; *Sylvia Dev. Corp.*, 48 F.3d at 818–19. "Discriminatory purpose implies more than 'awareness of consequences'; rather, a plaintiff must show that the decisionmaker 'selected or reaffirmed a particular course of action at least in part 'because of' ... its adverse effects upon an identifiable group.'" *Bruce & Tanya & Associates, Inc.*, 854 Fed. Appx. at 532.

    The Fourth Circuit's precedent

> has recognized several factors as probative of discriminatory intent, including: (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

*Id.*

In *Bruce & Tanya & Associates, Inc.*, the Fourth Circuit upheld a District Court's dismissal under Rule 12(b)(6) because the Plaintiff "failed to plead sufficient facts showing that the County was motivated by a discriminatory intent" to enforce its laws selectively against it. *Id.* at 532–533. There were no allegations of "significant" departures from normal procedure, and the facts pled tended to address discriminatory *effect* instead of *intent*. Despite facts alleged "consistent with a discriminatory scheme," the Court dismissed the case because the allegations "ultimately fall short of nudging [the plaintiff's] selective enforcement claim 'across the line from conceivable to plausible." *Id.* at 533.

Similarly, in *Greenspring Racquet Club, Inc.*, the Fourth Circuit upheld a 12(b)(6) dismissal when a property owner claimed that a local zoning ordinance targeted him to limit the height and density of buildings he could build on his property. 232 F.3d 887, *6. Specifically, the plaintiff alleged that "the ordinance was enacted by local authorities with malicious, bad faith, discriminatory intent, which, of course, is not related to any legitimate state purpose." *Id.* "These allegations, according to [plaintiff], are enough to survive the motion to dismiss. We *disagree*." *Id.* (emphasis added). The Court explained that

> While [plaintiff] is free to speculate about the hostility that local officials directed toward them, in order to state an equal protection claim [plaintiff] also must demonstrate that there is no other legitimate purpose for the law. In other words, [plaintiff] must allege that malice and bad faith were the *only conceivable* bases for enacting [the ordinance,] and this they cannot do.

*Id.* at *6 (emphasis in original).

As the above case law illustrates, contrary to Plaintiffs' Opposition (Doc. 10 at 10–11,) it is not sufficient to baldly plead that a plaintiff has been "intentionally and purposefully" discriminated against. Plaintiffs attempt to insert a new allegation into their Complaint by arguing in their Opposition that the City Council's "denial of both the 2016 and 2018

4

Applications that met all applicable criteria for approval constitute sufficient factual allegations as to intentional discrimination." (Doc. 10 at 10–11.) The Plaintiffs now contend that because City Council allegedly did not follow City policies and guidelines, that this is evidence of "improper motive of intentional and purposeful discrimination." (Doc. 10 at 11.)

First, these allegations are not found in the Complaint. The Court is unable to reasonably infer that the Plaintiff intended to plead intentional discrimination based on the simple allegation that the City Council denied the Plaintiffs' application contrary to its own guidelines. (Doc. 1 ¶ 30, 48.) Even if the City Council varied from its own guidelines, this fact alone is insufficient to overcome the hurdle that the Plaintiff must plead "that malice and bad faith were the *only conceivable* bases for enacting" the ordinance. By varying from its own guidelines, the City Council was exercising its legislative discretion, specifically stating its concerns that the project would have impacts on traffic, schools, and drainage. Even if the City Council were to misjudge one or more of these impacts, such an error is not indicative of discriminatory intent. Another non-discriminatory "conceivable basis" for the denial is that the City Council simply made a mistake.

Second, the City Council's varying from its level of service guidelines and Comprehensive Plan is not a "significant departure from normal procedures." As a matter of law in Virginia, "[w]hile the minimum standards of the Comprehensive Plan may only be guidelines and not requirements to be applied inflexibly by the Board, it was still a matter within the Board's discretion to decide whether to adhere to those standards or to follow some other reasonable approach in determining whether to grant or deny the rezoning application." *Bd. of Sup'rs of Loudoun County v. Lerner*, 221 Va. 30, 37, 267 S.E.2d 100, 104 (1980). This rule of law recognizes the deference given to legislative decisions made by elected bodies in Virginia,

which was addressed at length in the City Council's Brief in Support of 12(b)(6) Motion to Dismiss. (Doc. 8 at 5–8.) As such, it is not a "significant departure from normal procedures" for the City Council to vary from its own policies when disagreeing with an applicant as to the level of impacts created by the project which would be acceptable.

The City Council stated multiple reasons into the record for denying the 2018 Application related to legitimate land use impacts. The Plaintiffs insist that the City's levels of service policy ("LOS"), for example, is not "outdated" because it was amended only three years prior to their application being filed—but this is not a decision for them to make. The City Council was very reasonably of the opinion, stated into the record, that the traffic and schools impacts would be unacceptable, despite what was recommended in the levels of service policy. These were very "conceivable" non-discriminatory reasons—run of the mill land use concerns—for the Plaintiffs' application being denied.

2. The City Council Had A Rational Basis to Deny the Plaintiffs' Rezoning Application

The Plaintiffs contend in their Opposition that they have the right to determine when a City policy or guideline is out of date, instead of the legislative body. They state that the "Council's first reason [for denial], that the LOS standards are 'out of date,' is off base as the LOS standards were updated in 2015, just three years prior to the 2018 Application." (Doc. 10 at 9.) But as stated earlier, the City Council as the legislative body is legally afforded the discretion to decide when to follow its policies "or to follow some other reasonable approach in determining whether to grant or deny the rezoning application." Being three years old, or thirty years old, it's the City Council and not the Plaintiff that legally has the right to decide when a policy adequately addresses the particular application before it.

Notably, the Plaintiffs fail to address or refute any of the case law that the City cited in its Brief in Support regarding the rational basis and fairly debatable standards. Specifically, they cannot refute the fundamental rule that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*" *Sowers v. Powhatan County, Virginia*, 347 F. App'x 898, 902, 2009 WL 3359204, at *4 (4th Cir. 2009) (unpublished opinion) (emphasis added). The Plaintiffs are not members of a suspect class and the City Council's denial did not infringe upon a fundamental constitutional right. In this case, the City Council identified eminently reasonable bases for denying the Plaintiffs' application— traffic, schools, and drainage—and the Plaintiff referenced these bases for denial in their complaint and attached exhibits.[4]

Although the Plaintiffs disagree with the City Council's decision to not follow the LOS policies, it is undisputed that the City Council stated a reason for why it was not following the policies (it believed they were out of date), and then stated its reasons for denying the application into the record. Being afforded legislative discretion, when presented with conflicting opinions as to a development's impacts, the courts must defer to the legislative body.

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The [C]ourt will not substitute its

---

[4] In *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 439 (4th Cir. 2002), the Fourth Circuit stated that "we need look only to the text of the [legislative act] to uncover the County's legitimate governmental purpose." It does not matter that the *Tri County Paving, Inc.* case is a summary judgment case, because the Plaintiffs in this case included the City Council's basis for denying their zoning application in the complaint and its exhibits.

> judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained.

*Schefer v. City Council of City of Falls Church*, 279 Va. 588, 595, 691 S.E.2d 778, 782 (2010).

Plaintiffs also argue that the Council choosing to not follow its guidelines "adequately pleads the irrationality of Council's denial." (Doc 10. at 9.) But this argument ignores that City Council stated other rational reasons for denial into the record—traffic, schools, drainage. The Plaintiffs put the City's policies on a pedestal as if they are the only metric by which rationality may be judged—but that is not what the Constitution or case law supports.

    3.    <u>The Plaintiffs Have Failed to Sufficiently Identify Similar Situated Property Owners to Support Their Equal Protection Claim</u>

The Plaintiffs accuse the City Council of confusing the summary judgment and motion to dismiss standards. But the City Council is not "prematurely" challenging the complaint's factual assertions, because Plaintiffs picked the allegedly "similarly situated" properties, and affirmatively detailed the factual similarities that purportedly exist between them and the Plaintiffs' property. By doing this, they have opened the door to the City arguing on a 12(b)(6) Motion to Dismiss that the comparators are not similarly situated by comparing the facts as pled.

The City Council has identified significant flaws with considering the hand-picked properties by Plaintiffs "similarly situated." Almost all of the properties identified by Plaintiffs were approved for zoning classifications different from the ones they seek, were approved at vastly different points in time, and none even have commercial components.

In *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 439–40 (4th Cir. 2002),[5] the Fourth Circuit held that an asphalt plant was not similarly situated to other properties when its

---

[5] The Fourth Circuit cited *Tri County Paving, Inc.* with approval, despite being a summary judgment case, when considering a Rule 12(b)(6) Motion to Dismiss in *Bruce & Tanya & Associates, Inc.*, 854 Fed. Appx. at 533.

building permit was denied. *Id.* The plaintiff in *Tri County Paving, Inc.* contended that "it was treated differently from permit applicants who sought other sorts of residential and commercial building permits[.]" *Id.* The Fourth Circuit was "unpersuaded" because "[t]he County's granting of *other* building permits is irrelevant because [plaintiff] has not shown that any other company applied for a permit to construct a facility with environmental and safety concerns similar to an asphalt plant." *Id.* (emphasis added). In other words, the Fourth Circuit held that there must be similarity in the type of permits sought before applicants can be considered similarly situated.

In this case, the numerous properties identified by Plaintiffs were zoned to completely different zoning districts from the ones the Plaintiffs seek, and/or do not contain commercial components like Plaintiffs' project does. (*See* Doc. 8 at 11–12 for a review of the zoning classifications.) For those reasons, the City Council is not treating differently persons who are "in all relevant aspects alike." *Kolbe v. Hogan*, 849 F.3d 114, 147 (4th Cir. 2017) (quoting *Kolbe v. O'Malley*, 42 F.Supp.3d 768, 799 (D. Md. 2014)).

Furthermore, many of the properties identified by Plaintiff as being "similarly situated" had their zoning applications approved at very different points in time—decades apart in most cases. Timing alone is significant because the impacts a project creates will vary greatly depending on the time it was approved.

> In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment. Since zoning bylaws, environmental standards, and licensing criteria may change over time, courts must be sensitive to the possibility that differential treatment—especially differential treatment following a time lag—may indicate a change in policy rather than an intent to discriminate. Consequently, the most reliable comparisons are likely to be from roughly the same time frame.

*Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) (internal citations omitted).

For the above reasons, the Plaintiffs have pled themselves out of Court by identifying other rezoning applicants that are not similarly situated.

**B.      Count Two of the Complaint Should be Dismissed as Time Barred**

The Plaintiffs inappropriately attempt to add factual allegations to their Complaint to support an argument that Count II is timely by setting forth a partial procedural history of the case in state court. The Plaintiffs reference their "Petition for Review and Complaint" filed in Chesapeake Circuit Court, that they non-suited the case, and re-filed the case in this court within the remaining limitations period. None of these facts are contained within the Complaint. Even so, the Plaintiffs failed to state in their Opposition when the original case was filed and when the non-suit occurred, in order for this court to determine if the statute of limitations was met.[6]

Notably, the Plaintiffs do not disagree that the 30-day limitation in Virginia Code § 15.2-2285(F) applies to Count II. Instead, they rely on a waiver argument which is unsupported by law. Just like how the Plaintiffs may file anew a lawsuit in federal court that their rights under Virginia Code § 15.2-2208.1 were violated, the City Council may likewise take advantage of any and all defenses to the lawsuit that are not precluded by res judicata. The fact that the City Council identified a new defense to the Plaintiffs' complaint after it was re-filed in Federal Court, which was not addressed in state court, does not immunize Plaintiffs from their initial flaw in filing the state court complaint late.

---

[6] They failed to include in their factual recitation that the filed the original state court complaint in the wrong court and had part of their case dismissed by the Chesapeake Circuit Court due to being filed after the initial 30-day statute of limitations.

**C.     Count Two of The Complaint Should Be Dismissed For Failure to Adequately State a Claim Upon Which Relief May be Granted**

In their Complaint, Plaintiffs failed to point to any unlawful requirement that the City Council attempted to impose on them relating to their proposed rezoning project. The Plaintiffs now claim for the first time—nowhere to be found in their Complaint—that "Council denied the 2018 Application because, as Councilwoman Ritter acknowledged, Council could not lawfully require Plaintiffs to improve the drainage in this area. Therefore, Council's denial was based on an imposition of an unconstitutional condition." (Doc. 10 at 17.) This new argument is a non sequitur.

Councilmember Ritter acknowledged that the City's policies "require that drainage not be made worse. They do not require, nor can they, that drainage be made better. . . . We also cannot require a developer to make improvements off the site of their property. That is a part of the state law that governs how we look at these applications." (Doc. 1-2 at 3.) That is the extent of Councilmember Ritter's comments which could conceivably be misconstrued as an "imposition" that the denial was "based upon." Va. Code § 15.2-2208.1(A).

In merely acknowledging the legal limitations on the City Council's authority (the Councilmember's understanding of the law), however, it does not logically flow that Councilmember Ritter was asking or suggesting that the developers to do *anything*. The unconstitutional conditions doctrine does not prohibit local governments from acknowledging land use incompatibilities or impacts which actually exist when approving or denying rezoning applications. The unconstitutional conditions doctrine only prohibits localities from requiring developers to *actually do something* in excess of their rights. This test requires that any required zoning conditions, to be lawful, must have an essential nexus to the proposed project and rough proportionality with the problem being addressed. See *Dolan v. City of Tigard*, 512 U.S. 374,

11

114 S. Ct. 2309, 2319-20 (1994); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987).

Contrary to the incorrect legislative history the Plaintiffs proffer to the Court, Virginia Code § 15.2-2208.1 by its plain language only restrains *constitutional* violations, not violations of Virginia statutes which provide broader limitations on local government authority. It addresses only "unconstitutional condition[s] pursuant to the United States Constitution or the Constituion of Virginia[.]" Va. Code § 15.2-2208.1(A).[7] Therefore, under Virginia Code § 15.2-2208.1, the Council could *constitutionally* request drainage improvements (on-site or off-site) as long as the requested improvements had an essential nexus to the Plaintiffs' property and were roughly proportional to the existing drainage issues. However, Plaintiffs fail to identify in their Complaint any exactions which could possibly be measured against the *Nollan-Dolan* standard. Plaintiffs should be required to at least identify the supposedly excessive condition, and how it is excessive, before being allowed to go forward with this litigation. All they have stated thus far is that the allegedly unlawful exaction has to do with drainage (which was not identified until their Opposition).

Due to Plaintiff's failure to identify any required unconstitutional condition in the Complaint, Count II must fail. To rule otherwise would mean that applicants are *entitled* to bad projects when local governments are limited in how impacts may be mitigated. Instead, this Court should acknowledge that local governing bodies retain the legislative discretion to deny a

---

[7] There are other statutes in Virginia which further limit a locality's ability to request improvements in relation to a rezoning application, but those statutes fall outside of the remedy afforded by Virginia Code § 15.2-2208.1 and are not part of this case. *See, e.g.*, Va. Code §§ 15.2-2297 through 15.2-2303.4. Notwithstanding, Plaintiffs did not plead that City Council violated any of these other statutes in this case because it did not suggest, request, or require that any improvements be made regarding drainage.

bad project in situations where it is incapable of approving it with its most salient problems/impacts being addressed.

**D.  Count Three of The Complaint Should Be Dismissed Because The Alleged Violations of Plaintiff's Rights Have Already Occurred**

Plaintiffs argue that a declaratory judgment is appropriate because if they prevail in this matter, that they "will be entitled to a reconsideration of their 2018 Application and Council will be required to adhere to this Court's rulings." (Doc. 10 at 18.) However, if Plaintiffs prevail on their equal protection or unconstitutional exaction claims this Court will issue a ruling which will necessarily guide the conduct of the parties. And the City Council will be required "to adhere to this Court's rulings" regardless if the ruling is in the context of an equal protection case, or a declaratory judgment action.

Plaintiffs' arguments simply do not address how the requested declaratory relief is anything but redundant. "A declaratory judgment action simply is 'not an appropriate remedy for past conduct.'" *F.D.I.C. v. Bd. of Sup'rs of Arlington County*, E.D. Va. No. 1:11-CV-1394 AJT/TRJ, 2012 WL 3017862, at *4 (E.D. Va. July 23, 2012). For this reason, the City Council requests that the Court exercise its discretion in denying declaratory relief in this case.

## CONCLUSION

Based on the foregoing, and the reasons stated in the City Council's Motion to Dismiss and Brief in Support, this case should be dismissed.

                                          Respectfully submitted,

                                          **CITY COUNCIL FOR THE CITY OF CHESAPEAKE, VIRGINIA**

                                          By: _____/s/_____
                                                Daniel J. Wisniewski
                                                Assistant City Attorney

Jacob P. Stroman, City Attorney (VSB No. 31506)
Daniel J. Wisniewski, Assistant City Attorney (VSB No. 84624)
OFFICE OF THE CITY ATTORNEY
City of Chesapeake
306 Cedar Road
Chesapeake, Virginia 23322
Telephone: (757) 382-6586
Facsimile: (757) 382-8749
jstroman@cityofchesapeake.net
dwisniewski@cityofchesapeake.net

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, I filed the foregoing Reply Brief with the Clerk of the Court, and served the same on Plaintiffs' counsel, using the CM/ECF system.

_____/s/_____
Daniel J. Wisniewski, Esq.